**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**BILLY CAROL ANDERSON, SR.**                                    **PETITIONER**

**v.**                                    **CIVIL ACTION NO.: 1:21-cv-150-HSO-MTP**

**BURL CAIN**                                    **RESPONDENT**

<u>**REPORT AND RECOMMENDATION**</u>

BEFORE THE COURT is the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 [1] filed by Billy Carol Anderson, Sr. After careful consideration of the parties' submissions and the applicable law, the undersigned recommends that the Petition be denied.

**FACTS AND PROCEDURAL HISTORY**

On June 26, 2015, a jury convicted Anderson of seven (7) counts of touching a child for lustful purposes in the Circuit Court of George County, Mississippi. ([12-15] at 75-77). The trial court sentenced Anderson to fifteen (15) years on each count in the custody of the Mississippi Department of Corrections ("MDOC"), to run consecutively, and fined him $500 for each conviction.

In the instant Petition [1], Anderson alleges that various violations of his constitutional rights occurred during the trial and on appeal. The following is a summary of the pertinent facts and testimony adduced during trial.[1]

---

[1] Much of the factual summary is taken from the Court of Appeals of Mississippi opinion affirming the conviction of Petitioner. *See Anderson v. State*, 293 So. 3d 279, 283–85 (Miss. Ct. App. 2019), *reh'g denied* Jan. 21, 2020, *cert. denied*, Apr. 2, 2020.

In August of 2012, Anderson's stepdaughter Susan[2] told her mother Caroline, that Anderson had been improperly touching her for several years starting when she was twelve years old. Caroline did not initially contact the police. However, after Anderson made inappropriate sexual references about Susan to her, she testified that she "put the puzzle pieces together" and reported the incidents to the George County Sheriff's Office. ([12-19] at 42-43).

Detective Jason Pharez investigated the allegations and arranged for Susan to be interviewed by a certified forensic interviewer. ([12-18] at 150). Detective Pharez also spoke with several of Anderson's adopted or biological daughters,[3] as well Caroline, and one of Anderson's former wives. Anderson was subsequently indicted in July 2013 on seven counts of touching a child for lustful purposes under Miss. Code Ann. 97-5-23. ([12-10]). The indictment alleged that between June 1, 2010 and July 31, 2012, Anderson lustfully touched Susan's vagina with his hand at a time when Susan was under the age of sixteen.

Before trial commenced, the State moved to allow the testimony of two of Anderson's other daughters to show lustful, licentious intent and sexual motive pursuant to the Mississippi Supreme Court's holding in *Derouen v. State*, 994 So.2d 748 (Miss. 2008). In *Derouen*, as quoted by the Court of Appeals in Anderson's appeal, the Mississippi Supreme Court held that,

> evidence of a sexual offense, other than the one charged, which involves a victim other than the victim of the charged offense for which the accused is on trial may be admitted if it satisfies Rule 404(b), is filtered through Rule 403, and is accompanied by an appropriately-drafted limiting or cautionary instruction to the jury.

---

[2] The Court of Appeals changed the names of Anderson's victims in its opinion due to the sensitive nature of the case. The undersigned will refer to Anderson's victims by the names referenced in the Court of Appeals opinion throughout this Report and Recommendation.

[3] The Court of Appeals found that Petitioner has thirteen biological, adopted, or step children. *See Anderson*, 293 So.3d at 297 n.2.

*Anderson*, 293 So.3d at 286 (quoting *Derouen*, 994 So.2d at 756).

The Court held a *Derouen* hearing to determine whether the testimony of Anderson's other daughters would be admissible. ([12-17] at 56-[12-18] at 22). Ann,[4] an adopted daughter, and Sally, a biological daughter, ("the *Derouen* witnesses") testified at the hearing that when they were around Susan's age, Anderson improperly touched them under similar circumstances as those described by Susan.  The trial court determined that the similarity between Susan, Ann, and Sally's circumstances were "stark," and that Ann and Sally would be allowed to testify at Susan's trial to show Anderson's licentious motive and intent.[5]  ([12-18] at 22).

The trial began in June of 2015. The State's first witness was the victim, Susan. Susan testified that in June of 2010, the summer before she started eighth grade, she moved to George County. She testified that Anderson started inappropriately touching her when she was twelve years old and that it continued until she was fifteen or sixteen. ([12-18] at 119). Susan said that Anderson would "tickle" and "wrestle" with her and touch her vagina over her clothes. When she was asked to explain what she meant, Susan said that when Anderson was wrestling with her, he would try to "touch her with his fingers every time" and that he would try to "shove them up there." ([12-18] at 120).

---

[4] Due to the sensitive nature of their testimony, the Court of Appeals also changed the names of Petitioner's biological and adopted daughter in its opinion and the same changed names will be used throughout this Report and Recommendation.

[5] The trial court read a limiting instruction prior to Ann and Sally's testimony. The limiting instruction read as follows: "The acts testified by [Sally] and [Ann], are acts relating to charges for which Billy Carol, Anderson, Sr. is not present[ly] on trial, and are to be considered only for the limited purpose of showing proof of Billy Carol Anderson Sr.'s sexual motive and lustful intent. The Court instructs you that you cannot and must not simply infer that the defendant acted in conformity with his previous acts, and that is therefore guilty of the charge for which he is presently on trial." ([12-19] at 88).

Susan testified that this happened "all the time" and that it happened so many times that she could not remember them all. ([12-18] at 120). Susan also testified that when the wrestling first began, she would sometimes initiate it. She stated that "he started to touch me, and I didn't think anything of it because I was a young kid. I didn't expect to have a stepdad that would touch me." ([12-18] at 117). However, Susan testified that after Anderson continued "messing with" her during the wrestling, she stopped initiating it and that Anderson would initiate it instead. ([12-18] at 120).

Detective Jason Pharez and Susan's mother Caroline testified about their roles in the investigation. ([12-18] at 150; [12-19] at 42-43). The State also called the forensic interviewer who interviewed Susan to testify. ([12-19] at 77-78). The forensic interviewer stated that it is common for an abuse victim not to remember the exact number of times the victim has been abused, especially when it goes on for a long period of time. ([12-19] at 77-78). She also testified that the statements Susan made to her during the interview were consistent with a child that had been abused. ([12-19] at 85).

Both Sally and Ann also testified at Anderson's trial after the trial court read the appropriate limiting jury instruction. ([12-19] at 87-88). They testified that Anderson inappropriately touched them beginning when they were about the same age as Susan. ([12-18] at 88-137). After the State rested, the defense moved for a directed verdict. The motion was denied.

The defense then called its first witness Virginia, Anderson's oldest biological daughter. ([12-19] at 141). She testified that Susan was disrespectful to Anderson and that Susan would ride horses "with a bikini top on, and her little shorts that she had." ([12-20] at 11). On cross-examination Virginia admitted that when she was younger, she and her sister Melissa told their

4

stepmother that Anderson had sexually abused them. ([12-20] at 7-9). However, Virginia testified that that she had been lying and that she and Melissa made up these accusations so their stepmother would leave Anderson. ([12-20] at 7-8). Virginia testified that Anderson never touched her inappropriately.

Anderson testified on his own behalf. ([12-20] at 70). He confirmed many of the events that had been testified to by his daughters, including that Susan would come up behind him and begin wrestling with him. (12-20] at 76-78). However, he testified that he never physically hurt Susan, and he denied ever inappropriately touching her. ([12-20] at 82). He also denied ever having any improper contact with any of his daughters. ([12-20] at 93).

The State then called rebuttal witness Janie Grice, another one of Anderson's daughters. Janie testified that four of her sisters (none of which were the victim Susan) told her they had been sexually abused by Anderson throughout the years. ([12-20] at 114-15). The State rested, and the defense did not renew its motion for a directed verdict. The trial court instructed the jury which included repeating the limiting instruction with respect to the *Derouen* witnesses.

On June 26, 2015, a jury convicted Anderson as previously stated. ([12-15] at 75-77). Anderson appealed his convictions and sentences to the Court of Appeals of Mississippi. On September 5, 2018, appointed counsel for Petitioner filed a *Lindsey*[6] brief, stating that:

> counsel diligently searched the procedural and factual history of this criminal action and scoured the record, searching for any arguable issues which could be presented to the [c]ourt on [Anderson's] behalf, in good faith, for appellate review. Upon conclusion of this search, I have not found any arguable issues.

([12-5] at 7). On October 29, 2018, Anderson filed a *pro se* "Brief of Appellant" raising the following issues (as stated by Petitioner):

---

[6] *Lindsey v. State*, 939 So. 2d 743 (Miss. 2005).

I.    The *Derouen* witnesses were not credible and their testimony unfairly prejudiced the Defendant.

II.    Insufficiency of the evidence.

III.    The Court should have allowed a jury instruction to include a lesser offense of simple assault.

IV.    Indictment was defective due to identically worded counts charging [Anderson] with seven counts of lustfully touching S.B. over a period of two years and did not protect Defendant's right against double jeopardy as held in *Goforth v. State*, 70 So. 3d 174 (2011), in the event of future prosecutions for the same offense contrary to USCA Constitutional Amend[ment] V and Mississippi Constitutional Article 3 §22.

V.    Trial court erred by not swearing in the jury denying [Anderson] his due process right to claim double jeopardy against future offense claims under same indicted offense.

VI.    Whether the trial court erred in not sua sponte calling a mistrial and/or applying sanctions to witnesses in violation of [Anderson's] due process rights according to Mississippi Rule of Evidence 615.

VII.    Whether the trial court erred in sentencing decision based on alleged incident that happened thirty (30) years prior to trial, that had no bearing on charges listed in the indictment.

([12-4] at 6-8). On September 10, 2019, the Mississippi Court of Appeals affirmed Petitioner's convictions and sentences in a published opinion. *See Anderson v. State*, 293 So.3d 279 (Miss. Ct. App. 2019). The appellate court found that "[b]ased upon our thorough review of Anderson's supplemental *pro se* brief and the record, we find no arguable issues for appellate review." *Id*. at 283.

On August 27, 2020, Petitioner sought leave from the Mississippi Supreme Court to file his motion for post-conviction collateral relief in the trial court in which he asserted the following grounds (as stated by Petitioner):

I.    There exists evidence of material fact, not previously presented and heard that requires vacation of the sentences in the interests of justice. Specifically, jury was not

sworn.

II.     There exists evidence of material fact, not previously presented and heard that
        requires vacation of the sentences in the interest of justice. Specifically, witness
        tampering after the sequest[ration] rule was invoked. (M.R.E. 615).

III.    There exists evidence of material fact, not previously presented and heard that
        requires vacation of the sentences in the interests of justice. Specifically, proof of
        blackmail and/or framing.

IV.     Ineffective assistance of counsel.

V.      Ineffective appellate counsel.

([12-2] at 11). On November 18, 2020, the Mississippi Supreme Court issued an Order denying

his application finding "no merit" to his claims. ([11-2]).

        Anderson filed the instant Petition for Writ of Habeas Corpus [1] on May 4, 2021. He

raised the following issues (as stated by Petitioner):

I.      Ineffective assistance of counsel.

II.     Ineffective appellant counsel.

III.    [The Mississippi Supreme Court] violated Anderson's due process and constitutional
        rights.

IV.     Failure to swear in jury is a structural error and violates due process, fair trial, and is a
        fundamental miscarriage of justice.

V.      Trial court abused its discretion in not calling a mistrial after the sequester rule was
        invoked where the prosecutor complained of state and defense witnesses were texting
        each other about what was transpiring in and out of trial; while the trial was ongoing.

VI.     Trial court abused its discretion by sentencing Anderson; relying on crimes he was
        accused of 30 years earlier that he was never charged with nor convicted of, and were
        dropped.

([1]; [3]).  A Response [11] was filed on August 26, 2021, along with the state court record. *See*

Record [12]. Anderson filed his Reply [15], and this matter is now ripe for review.

**ANALYSIS**

The standard of review for habeas claims to be applied by this Court is set forth in 28

U.S.C. § 2254(d), which provides that a federal court may not grant habeas relief unless the state

court's adjudication of the claims "(1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States; or (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28

U.S.C. § 2254(d).  The "contrary to" and "unreasonable application" clauses of Section

2254(d)(1) have independent meanings. *Bell v. Cone*, 535 U.S. 685, 694 (2002).

The "contrary to" clause applies when the state court fails to apply a legal rule announced

by the Supreme Court or reaches a result opposite to a previous decision of the Court on

materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  The

"unreasonable application" clause applies when the state court "correctly identifies the governing

legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id*. at 407-08.

The "unreasonable application" inquiry is based on an objective standard, and "unreasonable"

does not equate with "incorrect." *Garcia v. Dretke*, 388 F.3d 496, 500 (5th Cir. 2004).

Habeas corpus serves as "a guard against extreme malfunctions in the state criminal

justice systems, not a substitute for ordinary error correction through appeal." *Harrington v.

Richter*, 562 U.S. 86, 102-03 (2011) (internal quotations omitted).  A federal court does not "sit

as a 'super' state supreme court" and may decide the issues presented by the habeas petition

"only to the extent that federal constitutional issues are implicated." *Smith v. McCotter*, 786 F.2d

697, 700 (5th Cir. 1986).

**Ground One: Ineffective assistance of counsel**

Anderson submits that his trial counsel was ineffective. Specifically, he argues that trial counsel failed to conduct an independent investigation and failed to present evidence supporting Anderson's "theory of the case." Petition [1] at 2.

To establish ineffective assistance of counsel, a defendant must demonstrate that his trial counsel's performance fell below an objective standard of reasonableness and that this deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984). Failure to establish either prong defeats the claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998). A court must presume that "counsel's conduct [fell] within the wide range of reasonable professional assistance," and a defendant is required to overcome that presumption. *Strickland*, 466 U.S. at 689. To demonstrate prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal quotations and citation omitted).

In considering Anderson's application for post-conviction relief, the Mississippi Supreme Court reviewed the claims for ineffective assistance of counsel and determined that there was "no merit to Anderson's claims." ([11-2]). Given that the ineffective assistance of counsel claims before this Court present a mixed question of law and fact and that *Strickland* is the "clearly

established Federal law" which governs such claims, the issue in this ground is "whether the Mississippi Supreme Court's decision to reject [Petitioner's] ineffective assistance claim[s] 'involved an unreasonable application' (and not merely an incorrect application) of *Strickland.*" *Neal v. Puckett,* 286 F.3d 230, 236 (5th Cir. 2002).

Anderson first asserts that his attorney failed to conduct a sufficient pretrial investigation. ([3] at 3). Anderson argues that he gave his attorney contact information of individuals who "witnessed the alleged victim and her mother threatening to blackmail, frame, and retaliate against Anderson for filing for divorce" but that his attorney did not contact them. ([3] at 3-4). Anderson argues that this failure to interview witnesses amounts to ineffective assistance of counsel.

"An attorney has a duty to independently investigate the charges against his client." *Bower v. Quarterman*, 497 F.3d 459, 467 (5th Cir. 2007) (citation omitted). But counsel "is not required to pursue every path until it bears fruit or until all conceivable hope withers." *Washington v. Watkins*, 655 F.2d 1346, 1356 (5th Cir. 1981) (citation omitted). As the Fifth Circuit has cautioned, courts "must be particularly wary of 'argument[s] [that] essentially come[] down to a matter of degrees. Did counsel investigate enough? Did counsel present enough mitigating evidence? Those questions are even less susceptible to judicial second-guessing." *Dowthitt v. Johnson*, 230 F.3d 733, 743 (5th Cir. 2000) (citation omitted) (brackets in original). "To establish that an attorney was ineffective for failure to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005).

In support of his argument, Anderson filed a series of affidavits. Anderson submitted an affidavit from Nancy Sessions that states that she would have testified that Anderson and

Caroline were having marital problems and that Susan told Nancy that she would do everything in her power to get rid of Anderson. ([3-4] at 2). Anderson submitted a statement from Kelly Sinclair that states she would have testified that she overheard Susan say that she was going to "fix" Anderson and "make him sorry." ([3-10] at 4). Anderson submitted an affidavit from Melissa Blake that states she would have testified that Sally, one of the *Derouen* witnesses, used to tell Anderson that if he did not allow her to quit school that she was going "to tell everyone and the law that he touched her on the butt." ([3-10] at 3). Anderson submitted an affidavit from a fellow inmate that states that he "personally called Kelly Sinclair" and was told that she did not testify at trial because "Anderson's trial counsel never called to speak to her about what she knew." ([3-10] at 8). Anderson also submitted an affidavit signed by himself and claims that he provided a list of witnesses to his trial counsel which included "Gene Herndon, Tyler + Zachery Blake, Alex Two and Jay Two, Eugene Carter, Keith Williams, Tom + Danielle + their son Bradly." ([3-10] at 10).

According to Anderson, he wanted to present evidence that the victim and her mother were motivated to lie about him sexually assaulting the child and that instead, counsel presented a general denial defense. ([3] at 5-6). Anderson argues that "he would have been acquitted" if this defense had been presented. ([3] at 6). However, Anderson's claim is without merit as the record reveals that trial counsel pursued his theory.

During cross-examination of the lead investigator, Jason Pharez, trial counsel directly questioned Pharez on his perception of the victim's truthfulness:

DEFENSE:     No sir. That's not what I'm asking you. If that was a lie if you were being told a lie, how credible could this report be, based on the information that she gave you?

MR PHAREZ: I strictly took her statement, what she told me at the time, and recorded it.

11

> DEFENSE:    And you never asked her again about that statement, whether it was one week or one year?
>
> MR PHAREZ: I don't recall if I asked her about it or not.
>
> DEFENSE:    Do you think [Susan] was completely truthful with you throughout this whole ordeal?

([12-19] at 20). Additionally, during cross-examination of the victim's mother, Anderson's ex-wife Caroline Anderson, trial counsel for Anderson again questioned the veracity of the victim:

> DEFENSE:    Ms. Anderson, when [Susan] first told you that she was abused by Billy, you didn't believe her, did you?
>
> CAROLINE
> ANDERSON:  I can't say that I didn't believe her. I was in shock.
>
> DEFENSE:    The fact is, ma'am, she has a history of lying doesn't she?

([12-19] at 50). Anderson himself took the stand during his trial and voiced his opinion that the victim was a liar. Trial counsel asked:

> DEFENSE:    Was [Susan] prone to lying?
>
> ANDERSON: Yeah.

([12-20] at 75).

Anderson also claims that Melissa Blake would have testified that Sally, a *Derouen* witness, was motivated to lie about him touching her. Anderson was not on trial, convicted, or sentenced for touching Sally. However, the record is again clear that Anderson's attorney pursued this theory and Anderson himself testified about Sally's motivation to lie.

> DEFENSE:    Now let me ask you about Sally made some allegations that you did that to her; that you improperly touched her?
>
> ANDERSON: Yes. She said whenever she was staying with me when I got custody of her, that's when she made the allegations, and it's not true.

12

> <u>DEFENSE</u>:    Tell me about the threats she made to you for you to pay her money or she would say that that happened.
>
> <u>ANDERSON</u>: …So we go home, and Monday I'm in the drug store, and she calls telling me, if you don't sign this paper, I'm going to tell them that you touched my butt and all this stuff….I was going to have to sign that paper or she would tell them I touched her butt.

([12-20] at 89-92).

Anderson also claims that his ex-wife was likewise motivated to lie about him in order to "blackmail" him related to their divorce. However, Anderson himself took the stand and did not testify about this. In fact, when asked whether he had "any idea why [his daughters] would get up here and make these allegations against [him]," he answered "No, sir." ([12-20] at 94). When asked on cross-examination, "Now you said earlier, and I just want to make sure I'm clear, you have no idea why these girls would be saying this, do you," Anderson answered, "No." ([12-20] at 109-110).

Additionally, Caroline Anderson was a witness at trial, and the record is clear that Anderson's trial counsel thoroughly cross-examined Caroline related to their divorce and property issues related to the divorce. ([12-19] at 52-53).

To the extent that Anderson argues that his trial counsel should have contacted "Gene Herndon, Tyler + Zachery Blake, Alex Two and Jay Two, Eugene Carter, Keith Williams, Tom + Danielle + their son Bradly," Anderson has not shown what these witnesses would have testified to or how it would have changed the outcome of his trial. *See Miller*, 420 F.3d at 361. Accordingly, Anderson cannot establish that his trial counsel was ineffective for failing to further investigate these witnesses. *Id*.

The record reveals that trial counsel presented Anderson's theory, and Anderson points to no evidence in the record that would have changed the outcome of his case. Therefore, the

Supreme Court of Mississippi's finding that there was "no merit" to this claim is not objectively unreasonable, and Anderson is not entitled to habeas relief on this claim.

**Ground Two: Ineffective Assistance of Appellate Counsel**

Anderson next argues that his appellate counsel was ineffective. First, Anderson argues that he paid money to an attorney to file an appellate brief, but that no brief was filed. ([3] at 13-17). The record reflects that Anderson was assigned counsel during his appeal who filed a *Lindsey* brief, and Anderson himself was able to file a *pro se* brief. Both of these briefs were addressed by the Court of Appeals, and they found no merit to any of Anderson's claims. *See Anderson*, 293 So.3d at 283.

Anderson also argues that assigned appellate counsel was ineffective for filing a *Lindsey* brief, finding that there were no arguable issues for appellate review. ([12-5] at 7). Anderson raised this claim in his application for post-conviction relief, but the Mississippi Supreme Court found the claim to be without merit. ([11-2]).

Under *Strickland*, appellate counsel does not have a duty to raise every "colorable" claim on appeal but has broad discretion in determining which issues are more likely to be successful. *Jones v. Barnes,* 463 U.S. 745, 751–54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). The Court of Appeals reviewed appellate counsel's *Lindsey* brief as well as Anderson's *pro se* brief and found that "Anderson's appellate counsel fully complied with *Lindsey*." *Anderson*, 293 So.3d at 285. Ultimately the Court of Appeals found that "[a]fter a thorough review of Anderson's supplemental *pro se* brief and the record, including the indictment, all pretrial and post-trial motions and orders, the jury instructions, the trial transcript, and the trial exhibits, we find that no arguable issues exist warranting appellate review." *Id*. at 297. Therefore, the Court of Appeals confirmed Anderson's convictions and sentences. *Id*.

14

Appellate counsel was not ineffective for failing to raise a meritless claim on appeal. *See U.S. v. Kimler,* 167 F.3d 889, 893 (5th Cir.1999) ("An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.") (citations omitted); *see also Jones,* 463 U.S. at 751–54, 103 S.Ct. 3308; *Wicker,* 783 F.2d at 497.

Even if Petitioner could show appellate counsel's performance was deficient in some way, he must also show that he was prejudiced by the deficient performance. *See Higgins v. Cain*, 720 F.3d 255, 260–61 (5th Cir. 2013) (citing *Strickland*, 466 U.S. at 687). Anderson filed his own appellate brief and post-conviction relief motion but was not able to identify arguments that appellate counsel could have presented which might have prevailed or changed the outcome. Accordingly, the Mississippi Supreme Court's finding that Anderson's ineffective assistance of appellate counsel claim had "no merit" was neither contrary to nor an unreasonable application of clearly established federal law. Anderson's claim for habeas relief on this ground should be denied.

**Ground Three: Whether the Mississippi Supreme Court violated Anderson's Due Process and Constitutional Rights**

Anderson argues that the Mississippi Supreme Court violated his due process and constitutional rights by dismissing his application for post-conviction relief in a one-page opinion that summarily found "no merit to Anderson's claims." ([11-2]; [3] at 23-26). Anderson claims that he was entitled to a detailed analysis of his claim of ineffective assistance of counsel under *Strickland*, and that the Mississippi Supreme Court's failure to provide this explanation violates his constitutional rights.

Fifth Circuit precedent is clear that claims like Anderson's fail because "infirmities in state habeas proceedings do not constitute grounds for relief in federal court." *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997); *see also Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999) (citing cases). "An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself." *Nichols v. Scott,* 69 F.3d 1255, 1275 (5th Cir.1995). Further, the Supreme Court has held that "§2254 does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). "Even if a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Vaccaro v. Stephens*, 566 Fed. Appx. 311, 314 (5th Cir. 2014) (citing *Harrington*, 131 S.Ct. at 785).

While Anderson argues that he was entitled to a detailed opinion rejecting his claims under *Strickland*, the Supreme Court is clear that he is entitled to no such relief. "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 131 S.Ct. at 785. For the reasons previously stated, it was not. Petitioner's claim for relief on this ground is without merit.

**Ground Four: Failure to Swear in the Jury**

Anderson next argues that the jury was never "sworn in" and that this violates his right to due process. ([1] at 10). The Court of Appeals reviewed this claim upon direct appeal and found that it was without merit. *See Anderson*, 293 So.3d at 293-94. In making this finding, the appellate court analyzed a relevant Mississippi Supreme Court case which states "in the absence of an affirmative showing to the contrary, it will be presumed on appeal that the jury in a

criminal case was sworn." *Moore v. State*, 996 So.2d 756, 761 (Miss. 2008). The Mississippi

Court of Appeals found that Anderson "failed to provide sufficient evidence that the oath was

not administered." *Anderson*, 293 So.3d at 294. The court concluded there were sufficient

references in the record to an oath being administered to the jury to support a finding that

Anderson's claim for relief on this ground lacked merit.

As the Court of Appeals interpreted its own law regarding the presumption that the jury

has been sworn, this court lacks the authority to rule otherwise. *See Charles v. Thaler*, 629 F.3d

494, 500-01 (5th Cir. 2011) ("A federal court lacks authority to rule that a state court incorrectly

interpreted its own law."). Anderson's request for habeas relief on this ground should be denied.

**Ground Five: Witness Sequestration**

Anderson next argues that the "trial court abused its discretion in not calling a mistrial

after the sequester rule was invoked where the prosecutor complained [that] state and defense

witnesses were texting each other about what was transpiring in and out of trial; while the trial

was ongoing." ([3] at 30). The Court of Appeals found no merit to this claim stating:

> Anderson has made no showing that he was prejudiced by the witnesses walking in
> and out of the courtroom, or the [defense] witness Shay's contact with Ann—nor
> do we find any evidence in the record that these actions constituted attempts to
> tailor these witnesses' testimony or resulted in inaccurate or false testimony. In
> short, Anderson has demonstrated no prejudice to him resulting from these
> incidents that would warrant reversal.

*Anderson*, 293 So.3d at 295-96.

The trial judge's ruling on an evidentiary matter such as witness sequestration, does not

rise to the level of a constitutional violation. The Fifth Circuit Court of Appeals has held that "[a]

state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a

specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v.*

*Puckett*, 176 F.3d 809, 820 (5th Cir. 1999). Anderson's allegations do not rise to this level.

Indeed, it appears that the trial judge addressed this issue as soon as he was made aware of it, and appropriately addressed the situation. The judge admonished the attorneys for both the State and the defense.

> THE COURT: Second, I understand there's some concern about witnesses going up and down out there and looking in the courtroom when witnesses are testifying. Make sure you tell your witnesses under oath and under the rule, that they're to stay where they're supposed to be, and they don't need to be walking up and down finding out who is testifying. I'm not going to have it. If they do it, one of the sanctions is they don't testify, so make sure you spread that word.

([12-19] at 63-64). The State then identified another instance of a defense witness contacting a State witness. The trial judge responded as follows:

> THE COURT: Wasn't that my first housekeeping thing, after the attorneys and everybody be here?
>
> MR. BEARD: Yes, sir.
>
> THE COURT: The rule being invoked, means it's invoked, and that means nobody better be talking to anybody. I'm going to start sanctioning people on both sides.
>
> MR. LOVORN: Your Honor, can we give Mr. Beard the opportunity to let his witnesses know that they're not to contact?
>
> THE COURT: I'll say it again, I want them told….

([12-19] at 65-66). The Mississippi Court of Appeals' decision that Anderson's claim was without merit was not contrary to, or an unreasonable application of, clearly established federal law, and Anderson has not shown violation of a specific constitutional right that would render his trial fundamentally unfair. Ground Five of Anderson's Petition [1] is without merit.

**Ground Six: Sentencing**

In Ground Six, Anderson argues that the trial court abused its discretion during sentencing. ([3] at 32). Anderson claims that the trial court improperly considered Ann's

testimony that Anderson sexually abused her when she was around the same age as the victim. Anderson also claims that his sentences are disproportionately harsh. ([3] at 35).

The court of appeals determined that "Anderson's sentences were within the limits prescribed by statute" and that it was "therefore not subject to appellate review." *Anderson*, 293 So.3d at 296. The appellate court further noted that the trial judge stated during sentencing that Anderson "has not ever been convicted of a crime." *Id*. at 296-97. The court of appeals found that no proportionality analysis was required as Anderson was sentenced within the statutory limits. *Id*. at 297. Accordingly, the court of appeals found his claim without merit.

Liberally construing Anderson's Ground Six, Anderson is arguing that his sentences violate the Eighth Amendment by being grossly disproportionate to the conviction. When evaluating an Eighth Amendment proportionality challenge, the Court must first make a threshold comparison between the gravity of the charged offense and the severity of the sentence. *McGruder v. Puckett*, 954 F.2d 313, 315-16 (5th Cir. 1992). If the sentence is not grossly disproportionate to the offense, the inquiry is complete. *See id.* at 316. Furthermore, it is "the rare case when a threshold comparison of the crime committed to the sentence imposed leads to an inference of gross disproportionality." *McGruder v. Puclkett*, 954 F.2d 313, 316 (5th Cir. 1992) (quoting *Harmelin v. Michigan*, 501 U.S. 957 (1991) (J. Kennedy, concurring).

"If a sentence is within the statutory limits, the petitioner must show that the sentencing decision was wholly devoid of discretion or amounted to an 'arbitrary or capricious abuse of discretion' or that an error of law resulted in the improper exercise of the sentencer's discretion." *See Haynes v. Butler,* 825 F.2d 921, 924 (5th Cir. 1987). Although he strongly disagrees with the sentences imposed, Anderson has failed to show that the trial court's sentencing of Petitioner to fifteen years for each act of touching a child for lustful purposes, which is within the statutory

guidelines, is arbitrary or capricious or an abuse of the trial court's discretion. Therefore, Anderson's claim for relief in Ground Six must be denied.

**Evidentiary Hearing**

Anderson further submitted in his Petition [1] that an evidentiary hearing is necessary. A habeas petitioner is not entitled to discovery as a matter of course. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). 28 U.S.C. § 2254(e)(2) governs evidentiary hearings in habeas matters and states:

> **(2)** If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> **(A)** the claim relies on—
>
> > **(i)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > **(ii)** a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> **(B)** the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

The arguments raised in the Petition [1] do not invoke a new rule of constitutional law that has been made retroactive on collateral review. 28 U.S.C. § 2254(e)(2)(a)(i). Nor does Petitioner rely upon a factual predicate that could not have been previously discovered through due diligence. 28 U.S.C. § 2254(e)(2)(a)(ii).

While Petitioner has vigorously argued his Petition, he has not explained how an evidentiary hearing would bring forth facts that could not have been discovered previously and which show that a constitutional error occurred. The Fifth Circuit has "repeatedly found that a

paper hearing is sufficient to afford a petitioner a full and fair hearing on the factual issues underlying the petitioner's claims." *Clark v. Johnson*, 202 F.3d 760, 766 (5th Cir. 2000). Because the elements of 28 U.S.C. § 2254(e)(2) are not satisfied, an evidentiary hearing is not necessary.

**RECOMMENDATION**

For the reasons set forth above, the undersigned recommends that the Petition for Writ of Habeas Corpus [1] be DENIED.

**NOTICE OF RIGHT TO OBJECT**

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the district judge, the magistrate judge and the opposing party. The district judge at the time may accept, reject or modify in whole or part, the recommendations of the magistrate judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 8th day of February, 2023.

/s/ Michael T. Parker
United States Magistrate Judge